# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

### HELENA DIVISION

| | |
|---|---|
| PAUL HARTSON FLETCHER, | Cause No. CV 09-00073-GF-SEH-RKS |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DISMISS COMPLAINT |
| WARDEN SAM LAW, et. al., | |
| Defendants. | |

Plaintiff Paul Fletcher is a prisoner representing himself and proceeding in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff's Complaint alleges Defendants violated his federal constitutional rights when they prohibited him from and disciplined him for assisting other inmates with legal matters.  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. STATEMENT OF THE CASE

### A. Parties

Plaintiff is a state prisoner incarcerated at Crossroads Correctional Center in Shelby, Montana.

The named Defendants are:  Warden Sam Law, Assistant Warden Ivans, Chief of Security Busby, Chief of Unit Management Sturchio, Lieutenant J.J. Johnson, Correctional Officer Burtness, Crossroads Correctional Center Librarian Linda O'Conner, Crossroads Correctional Center–Shelby Unit, Corrections Corporation of America, Mike Ferriter, and Warden Mike Mahoney.

### B. Factual Background

Plaintiff alleges on or about August 1, 2008, while incarcerated at Montana State Prison, another inmate asked Plaintiff for help with his habeas corpus case. Wagner told Plaintiff he could not obtain any "immediate" legal assistance from MSP staff or legal library workers.  Plaintiff then began assisting.

On or about January 1, 2009, Plaintiff was transferred from Montana State Prison (MSP) to Crossroads Correctional Center (CCA) in Shelby, Montana. Once at Crossroads, Plaintiff was again approached by the same inmate for legal assistance.  Wagner told Plaintiff the legal library workers were restricted from

assisting him due to Crossroads policy which prohibited inmates from providing legal assistance. Plaintiff alleges, upon information and belief, that Crossroads did not provide any legal services by contract attorney's, paralegals, volunteer attorneys, lay person, or other persons trained in the law. Plaintiff met with the inmate in the Crossroads legal library. The complaint alleges the inmate told Plaintiff Crossroads was "impairing" his ability and right to apply to a federal court for a writ of habeas corpus. Plaintiff provided legal information and assistance.

Defendant O'Conner told Plaintiff he was violating CCA policy 14.8 D. Plaintiff refused to stop, citing *Johnson v. Avery*, 393 U.S. 483 (1969).

Though instructed to stop and to leave the law library immediately, Plaintiff was defiant. Defendant O'Conner summoned Defendant Burtness to the library. Burtness responded, put handcuffs on Plaintiff, and escorted Plaintiff to Chief of Security Busby's office. Upon arrival, Defendants Sturchio, Johnson, and Recreational Supervisor Bartosh were present. Defendant Sturchio asked what the issue was. Plaintiff was again defiant.

As a result, on January 14, 2009 at 7:30 a.m. Plaintiff was placed in the Administrative Segregation/isolation cell for approximately 29 hours. Plaintiff

was transferred back to general population on January 15, 2009 at 12:00 p.m.

On or about March 1, 2009, Plaintiff was approached by another inmate seeking Plaintiff's assistance with the preparation of a federal habeas petition, saying the Offender Legal Library Workers would not assist him with his initial pleadings, he did not know how to prepare the petition himself, and he had a filing deadline.  Plaintiff began preparing the federal habeas pleadings.  On March 2, 2009, Plaintiff accessed the Offender Legal Library to type the other inmate's pleadings.  Defendant O'Conner confiscated the papers.  Plaintiff was reminded by Education Director Kulpas that he was not allowed to assist other inmates with legal work.  Defendant O'Conner then prepared a disciplinary report alleging Plaintiff violated disciplinary rule 4213–disobeying a direct order.  After a disciplinary hearing on March 5, 2009, Plaintiff was found guilty of disobeying a direct order, sanctioned to five days in administrative segregation, and fined five dollars.

### C.  Allegations

Plaintiff alleges three claims.  First, he contends the prohibition on inmate-to-inmate legal assistance violates *Johnson v. Avery.*  Secondly, he contends he was illegally placed in administrative segregation without due process of law.

Finally, he contends segregating him in isolation from his "class of people"

violated the Americans with Disabilities Act.

## II.  PRESCREENING

### A.  Standard

As Plaintiff is a prisoner proceeding in forma pauperis, his Complaint is

subject to screening under 28 U.S.C. § 1915 and 28 U.S.C. § 1915A.  Section

1915A reads in pertinent part as follows:

> The court shall review  . . .  as soon as practicable after docketing, a
> complaint in a civil action in which a prisoner seeks redress from a
> governmental entity or officer or employee of a governmental entity
> [and][o]n review, the court shall identify cognizable claims or dismiss
> the complaint, or any portion of the complaint, if the complaint (1) is
> frivolous, malicious, or fails to state a claim upon which relief may be
> granted; or (2) seeks monetary relief from a defendant who is immune
> from such relief.

28 U.S.C. § 1915A(a) and (b); *see also* 28 U.S.C. § 1915(e)(2)(B)

("Notwithstanding any filing fee, or any portion thereof, that may have been paid,

the court shall dismiss the case at any time if the court determines that  . . .  (B) the

action or appeal-(i) is frivolous or malicious; (ii) fails to state a claim on which

relief may be granted; or (iii) seeks monetary relief against a defendant who is

immune from such relief.").

Sections 1915A(b) and 1915(e)(2)(B) allow for the dismissal of a complaint

before it is served upon the defendants if it is "frivolous" or "fails to state a claim upon which relief may be granted."  A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989).  A complaint fails to state a claim upon which relief may be granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007) (quotation omitted).  This requirement demands "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. 544.  A complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)(quoting *Bell*, 127 S.Ct. at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957))).

Rule 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks omitted).  The "plausibility standard" is guided by "[t]wo working principles." *Iqbal,* 129 S.Ct. at 1949.  First, although "a court must accept as true all of the allegations contained

in a complaint," that "tenet" "is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. "Second, only a complaint that states a plausible claim for relief survives" and "[d]etermining whether a complaint states a plausible claim for relief will, . . . , be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 129 S.Ct. at 1950. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal.* 129 S.Ct. at 1949 (internal quotation marks and citation omitted).

The court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal,* 129 S.Ct. at 1950. Legal conclusions must be supported by factual allegations. *Iqbal,* 129 S.Ct. at 1950. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal,* 129 S.Ct. at 1950.

Even after *Twombly*, "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson*, 127 S.Ct. at 2200; *Cf.* Fed.R.Civ.P. 8(f) ("All pleadings shall be so construed as to do substantial justice").

The district court retains discretion to grant or deny leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). The court can decline to grant leave to amend if "it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez*, 203 F.3d. at 1127 (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Leave to amend is liberally granted to pro se litigants unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (citing *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980)).

**B. Analysis**

    1. <u>Prohibition on inmate-to-inmate legal assistance</u>

Title 42 U.S.C. § 1983 provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. To have a claim under § 1983, a plaintiff must plead that the named

defendant (1) acted "under color of state law" and (2) "deprived the plaintiff of rights secured by the Constitution or federal statutes." *Gibson v. U.S.*, 781 F.2d 1334, 1338 (9th Cir. 1986); *see also West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

Plaintiff repeatedly cites *Johnson v. Avery* in his Complaint, but he never identifies the constitutional right he has that is allegedly violated by the inmate-to-inmate legal assistance prohibition for which he has standing to assert. Plaintiff mentions the Sixth Amendment right of access to the courts but he has no standing to assert such a right. To establish standing for an access-to-courts claim, a plaintiff must show he suffered an "actual injury" with respect to contemplated litigation. *Lewis v. Casey*, 518 U.S. 343, 351-53, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Plaintiff makes no such claim regarding his own legal matters. Plaintiff alleges wrongs affecting other inmates' legal proceedings, not his. He has no Sixth Amendment right to access the courts on behalf of other inmates.

Similarly, Plaintiff does not have a special First Amendment right to provide legal assistance to other inmates. *Shaw v. Murphy*, 532 U.S. 223, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001). The Supreme Court has refused to give any

special protection to legal assistance provided by one inmate to another in part because of administrative problems attendant to this type of activity.  *Id.*

Plaintiff relies exclusively on *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969) which does not provide for a specific right to provide legal assistance.  The plaintiff in  *Avery* filed a petition for habeas corpus, seeking release from disciplinary confinement after being housed there for assisting other inmates with legal work.  In *Avery*, the Court did not identify a specific right to inmate-to-inmate assistance, but rather found that the discipline the plaintiff received was in conflict with the right of habeas corpus.  More recently in *Shaw v. Murphy*, the Court specifically refused to recognize a special right to provide legal assistance.  Because Mr. Fletcher does not seek habeas release from confinement, nor can he state which federally protected right was violated, his claim fails as a matter of law.

This claim should be dismissed.

2. <u>Disciplinary Due Process</u>

Similarly, Plaintiff failed to state a Fourteenth Amendment due process claim.  To state a claim for a due process violation, a plaintiff must show (1) he had a protected liberty interest and (2) was deprived of that interest without

adequate due process.  If there is no liberty interest at stake, the Constitution does not require any process, and the second element becomes irrelevant.  *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 223-24 (1976); *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Erickson v. United States*, 67 F.3d 858, 861 (9th Cir. 1995).

In the prison setting, a liberty interest is recognized and protected only if state officials or employees take actions that either (1) affect the sentence imposed upon conviction in an unexpected manner, or (2) impose a hardship that is atypical and significant in relation to the ordinary incidents of prison life.  *See Sandin v. Conner*, 515 U.S. 472, 483-84 (1995); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).

In Plaintiff's case, the threshold requirement for showing a liberty interest is not met.  Plaintiff is serving a three-year term for stalking.  *See* CON Network, http://app.mt.gov/conweb.  "Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose."  *Meachum*, 427 U.S. at 225.  Consequently, placement in any part of a Montana prison would not affect the sentence in an unexpected manner.  Therefore, the first prong of the *Sandin* test for a liberty interest is not met.

The second prong of the *Sandin* test also is not met.  Whether a hardship is "atypical and significant" depends on three factors:

> 1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Ramirez*, 334 F.3d at 861 (citing *Sandin*, 515 U.S. at 486-87); *see also Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007) (holding that inmate was not deprived of a liberty interest where he was placed at a higher security level than indicated by calculation under controlling prison regulations).  Plaintiff was placed in administrative segregation for 29 hours in January 2009 and for five days in March 2009.  This is not atypical or significant in comparison to inmates in protective custody or inmates whose placement has not yet been determined.  *See Sandin*, 115 S.Ct. at 2301 (30 days disciplinary segregation not "atypical" where no evidence that discipline differed from other kinds of segregation).  Placement in segregation falls within the terms of confinement ordinarily contemplated when a prison sentence is imposed, *see Toussaint v. McCarthy*, 801 F.2d 1080, 1091-92 (9th Cir. 1986).  The discipline Plaintiff received "comported with the prison's discretionary authority."

In *Wilkinson v. Austin*, 545 U.S. 209 (2005), the United States Supreme Court held that placement in a supermax prison gives rise to a liberty interest. But, the Court noted that prison conditions where lights are on 24 hours a day, and exercise is permitted only for one hour per day in a small indoor room would likely apply to most solitary confinement facilities and probably would not, under *Sandin*, give rise to a liberty interest. *See id.* at 223-24. The crucial facts which led to a finding of a liberty interest in *Wilkinson* were (1) that inmates were deprived of "almost all human contact, even to the point that conversation is not permitted from cell to cell"; (2) that placement was for an indefinite period of time, with yearly review; and (3) that inmates lost their parole eligibility. *Id.* The facts alleged by Plaintiff are not remotely comparable. Plaintiff's placement in administrative segregation put him in conditions that are well within prison officials' discretion to impose.

Thus, Plaintiff cannot show he had a liberty interest in avoiding the discipline received. *See Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003)("[A]dministrative segregation in and of itself does not implicate a protected liberty interest.")(*citing Sandin*, 515 U.S. at 486).

Plaintiff alleges the was hearings before being disciplined. But, it is

irrelevant whether Plaintiff received adequate due process protections, because he was not constitutionally entitled to due process.  Plaintiff has failed to state a viable due process claim with regard to the discipline he received.  His due process claims should be dismissed.

### 3.  ADA Claim:  Prima Facie Case of Discrimination

The Americans with Disabilities Act was enacted in 1990 with the purpose, in part, "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).  "The statute addresses this goal in three main sections:  Title I prohibits public and private employers from discriminating against qualified individuals with disabilities in employment practices; Title II requires state and local governments to ensure that individuals with disabilities have access to public services, including transportation services; and Title III requires equal access to public accommodations." *Bass v. County of Butte*, 458 F.3d 978 (9th Cir. 2006).

Plaintiff's claims presumably fall within Title II of the ADA, as neither Title I nor Title III are applicable to Plaintiff's allegations.  Pursuant to Title II of the ADA, a "qualified individual with a disability" cannot, "by reason of such disability, be excluded from participation in or be denied the benefits of the

services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II applies to prisoners in state facilities. *See Pa. Dep't of Corr. v. Yeskey,* 524 U.S. 206, 209-10, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998); *Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th Cir. 2001).

In order to state a claim of disability discrimination under Title II of the ADA a plaintiff must allege four elements: 1) he is an individual with a disability; 2) he is otherwise qualified to participate or receive the benefit of some public entity's services, programs, or activities; 3) he was either excluded from participation in or denied the benefits of the public entity's services . . . or was otherwise discriminated against by the public entity; and 4) such exclusion, denial . . . or discrimination was by reason of his disability." *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004); *see also, Townsend v. Quasim*, 328 F.3d 511, 516 (9th Cir. 2003); *Duffy v. Riveland*, 98 F.3d 447, 455 (9th Cir. 1996).

Plaintiff makes no claim he was excluded from participation in or denied benefit of public services. Plaintiff claims he was segregated from other handicapped inmates. Such allegations fail, as a matter of law, to state an ADA

claim.

## III. CONCLUSION

### A.  Leave to Amend

For the reasons set forth above, Plaintiff's Complaint fails to state a claim upon which relief may be granted.  Given the detailed information provided in Plaintiff's Complaint, the defects set forth above could not be cured by the allegation of other facts.  As such, Plaintiff's Complaint should be dismissed.

### B.  "Strike" under 28 U.S.C. § 1915(g)

The Prison Litigation Reform Act (PLRA) prohibits prisoners from bringing forma pauperis civil actions if the prisoner has brought three or more actions in federal court that were dismissed for frivolousness, maliciousness, or for failure to state a claim.  28 U.S.C. § 1915(g).  The Court should designate this case as a "strike" under this provision because Plaintiff fails to state a claim upon which relief may be granted.

### C.  Certification Regarding Appeal

The Federal Rules of Appellate Procedure provide as follows:

[A] party who was permitted to proceed in forma pauperis in the district-court action, or who was determined to be financially unable to obtain an adequate defense in a criminal case, may proceed on appeal in forma pauperis without further authorization, unless:

(A) the district court-before or after the notice of appeal is filed-certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis and states in writing its reasons for the certification or finding;

Fed.R.App.P. 24(a)(3)(A).

Analogously, 28 U.S.C. § 1915(a)(3) provides "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."  The good faith standard is an objective one. *See Coppedge v. United States*, 369 U.S. 438, 445 (1962).  A plaintiff satisfies the "good faith" requirement if he or she seeks review of any issue that is "not frivolous." *Gardner v. Pogue*, 558 F.2d 548, 551 (9th Cir. 1977) (quoting *Coppedge*, 369 U.S. at 445).  For purposes of section 1915, an appeal is frivolous if it lacks any arguable basis in law or fact. *Neitzke*, 490 U.S. at 325, 327; *Franklin v. Murphy*, 745 F.2d 1221, 1225 (9th Cir. 1984).  "[T]o determine that an appeal is in good faith, a court need only find that a reasonable person could suppose that the appeal has some merit." *Walker v. O'Brien*, 216 F.3d 626, 631 (9th Cir. 2000).

Plaintiff's failures to state a claim are so clear no reasonable person could suppose an appeal would have merit on those issues.  Therefore, the Court should certify that any appeal would not be taken in good faith.

**D. Address Changes**

At all times during the pendency of this action, Plaintiff SHALL IMMEDIATELY ADVISE the Court of any change of address and its effective date.  Such notice shall be captioned "NOTICE OF CHANGE OF ADDRESS." The notice shall contain only information pertaining to the change of address and its effective date, except if Plaintiff has been released from custody, the notice should so indicate.  The notice shall not include any motions for any other relief. Failure to file a NOTICE OF CHANGE OF ADDRESS may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

Based upon the foregoing, the Court issues the following:

**RECOMMENDATIONS**

1.  Plaintiff's Complaint should be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted.

2.  The Clerk of Court should be directed to close this matter and enter judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

3.  The Clerk of Court should be directed to have the docket reflect that the dismissal counts as a strike pursuant to 28 U.S.C. § 1915(g) because Plaintiff

failed to state a claim upon which relief may be granted.

4.  The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Fed.R.App.P. 24(a)(3)(A) that any appeal of this matter would not be taken in good faith.

### NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff may serve and file written objections to this Findings and Recommendations within ten (10) business days of the date entered as indicated on the Notice of Electronic Filing.  Any such filing should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge and may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

This order is not immediately appealable to the Ninth Circuit Court of

Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1), should not be

filed until entry of the District Court's final judgment.

DATED this 19th day of November, 2009.


/s/ Keith Strong
Keith Strong
United States Magistrate Judge